**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | |
|---|---|
| FRANCES BENNETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 2:15CV00052 AGF |
| | ) |
| CAROLYN COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the

Commissioner of Social Security finding that Plaintiff Frances Bennett was not disabled,

and, thus, not entitled to Supplemental Security Income ("SSI") under Title XVI of the

Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f, or disability insurance benefits

under Title II of the Act.  For the reasons set forth below, the decision of the

Commissioner will be affirmed.

## BACKGROUND

Plaintiff, who was born on October 3, 1960, filed her applications for benefits on

May 30, 2012, and protectively filed for SSI on June 4, 2012, alleging a disability onset

date of January 15, 2012 (when she was approximately 51 years old), due to anxiety,

depression, chronic pain, and liver issues.[1]  After Plaintiff's applications were denied at

---

[1]    As Plaintiff's arguments relate only to her mental impairments, this Memorandum
and Order does not discuss Plaintiff's physical impairments in detail.

the initial administrative level, she requested a hearing before an Administrative Law Judge ("ALJ").  A video hearing was held on October 7, 2013, and continued on January 13, 2014.  Plaintiff and a vocational expert ("VE") testified at the hearing.  By decision dated February 28, 2014, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform certain jobs that were available in the national economy, and was therefore not disabled under the Act.  Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on May 19, 2015.  Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ's decision was not supported by substantial evidence in the record.  More specifically, Plaintiff argues that the ALJ failed to properly consider the opinion of Plaintiff's treating psychologist, Nikole Cronk, Ph.D.  Plaintiff also argues that even though the ALJ afforded "great weight" to the opinion of state consulting psychologist, Margaret Sullivan, Ph.D., the ALJ did not properly incorporate all aspects of  Dr. Sullivan's opinion into the RFC.  Plaintiff asks that the ALJ's decision be reversed and the case remanded for further development of the record.

## Medical Record and Evidentiary Hearing

The Court adopts Plaintiff's unopposed Statement of Facts (Doc. 12-1), as amended by Defendant (Doc. No. 18-1), along with Defendant's unopposed Statement of Additional Facts (Doc. No. 18-2).  These facts, taken together, present a fair and accurate

summary of the medical record and testimony at the evidentiary hearing.  The Court will

discuss specific facts as they are relevant to the parties' arguments.

**ALJ's Decision** (Tr. 10-25)

The ALJ found that Plaintiff had not engaged in substantial gainful activity since

her alleged disability onset date, and that she had the severe impairments of anxiety,

depression, chest wall pain/fibromyalgia, chronic pain, and obesity, but that none of these

impairments, individually or in combination, met the requirements for a deemed-

disabling impairment listed in the Commissioner's regulations.  With respect to

Plaintiff's mental impairments, the ALJ found that the "Paragraph B criteria" for Listing

12.04 (affective disorders) or Listing 12.06 (anxiety-related disorders) were not met[2]

because Plaintiff had only moderate restrictions in activities of daily living; social

---

[2]    As relevant here, these conditions are not deemed disabling unless functional
limitations known as "Paragraph B criteria" are met.  Paragraph B criteria are met if there
is a marked functional limitation in at least two of the following categories: (1) daily
living; (2) social functioning; (3) concentration, persistence, or pace; and repeated
episodes of decompensation (three episode within one year), each of an extended
duration (at least two weeks).

Listing 12.04 also has additional functional criteria known as "Paragraph C criteria"
that are assessed if Paragraph B criteria are not satisfied.  Paragraph C criteria for a
deemed-disabling affective disorder are (1) repeated episodes of decompensation, each of
extended duration; or (2) a residual disease process that has resulted in such marginal
adjustment that even a minimal increase in mental demands or change in the environment
would be predicted to cause the individual to decompensate; or (3) a current history of
one or more years' inability to function outside a highly supportive living arrangement,
with an indication of continued need for such an arrangement.

functioning, and concentration, persistence, and pace; and no episodes of decompensation that lasted for an extended duration (two weeks or more).

The ALJ then proceeded to assess Plaintiff's RFC and found, as relevant here, that Plaintiff had the RFC to perform simple, routine, and repetitive tasks requiring no interaction with the public and only occasional interaction with co-workers. The ALJ described Plaintiff's history of anxiety and psychotherapy treatment, noting that her psychotherapy providers thought her pain was a result of anxiety. The ALJ also noted that Plaintiff had no inpatient treatment or "substantial break down" during the relevant time period. The ALJ pointed out that from July 23, 2012, when Plaintiff first met with Dr. Cronk, whose treatment in bi-weekly sessions consisted of cognitive behavior therapy and supportive psychotherapy focused on stress management, Plaintiff's mental condition was described as stable and normal with only a few exceptions. The record showed that Plaintiff experienced increased anxiety in response to stressful situations, and that her depression improved and was then stable on Celexa (an antidepressant).

In sum, the ALJ found that "the medical treatment evidence documented that [Plaintiff's] mental health impairments were not disabling during the relevant period of this claim." In making her RFC determination, the ALJ accorded "little weight" to Dr. Cronk's Medical Source Statement dated September 13, 2013, in which Dr. Cronk indicated, in check-box format, that Plaintiff's abilities were only "fair" with respect to interacting with the general public, getting along with co-workers, maintaining attention

for two hours, sustaining an ordinary routine, working with or near others, traveling to unfamiliar places, and using public transportation. Dr. Cronk further indicated that Plaintiff could not maintain regular attendance or be punctual, complete a normal workday or workweek, or perform at a consistent pace. (Tr. 743-48.) The ALJ gave little weight to Dr. Cronk's opinions to the extent they reflected more serious impairments than those accounted for in the ALJ's RFC assessment because such opinions were contradicted by the Global Assessment of Functioning ("GAF") score of 62[3] that Dr. Cronk diagnosed on the same form; by Plaintiff's ability to function without inpatient mental health treatment; and by Plaintiff's regular church attendance, frequent door-to-door work with her Bible ministry, and Plaintiff's part-time employment (for several months in 2012).

The ALJ stated that she afforded "great weight" to the mental RFC assessment prepared by nonexamining consultant Dr. Sullivan on August 15, 2012. Dr. Sullivan indicated on the assessment form that Plaintiff's mental impairments caused moderate

---

[3]  A GAF score represents a clinician's judgment of an individual's overall ability to function in social or occupational settings, not including impairments due to physical or environmental limitations. Diagnostic & Statistical Manual of Mental Disorders (4th ed.) (DSM-IV) at 32. GAF scores of 31 to 40 indicate some impairment in reality testing or communication or "major" impairment in social or occupational functioning; scores of 41 to 50 reflect "serious" impairment in these functional areas; scores of 51 to 60 indicate "moderate" impairment; scores of 61 to 70 indicate "mild" impairment.

limitations in ability to understand, remember, and carry out detailed instructions; complete a normal workday and workweek without interruption from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriate with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with co-workers or peers. Dr. Sullivan indicated that Plaintiff was not significantly limited in all other work-related activities. (Tr. 99-106.) The ALJ stated that she believed that Dr. Sullivan's assessment was consistent with the evidence.[4]

The ALJ found that Plaintiff's testimony of disabling impairments was "less than fully credible." First, Plaintiff's own Function Report showed that she could do a wide range of activities in periods when she claimed to be disabled, including going various places three days a week for three to five hours to perform Bible ministry, and then working from 4:00 pm to 8:00 pm in her home health services job, in addition to working cleaning houses a few hours a week.

The ALJ found that Plaintiff's RFC would not allow her to perform her past work as a cleaner or home health aide. Relying on the testimony of the VE that there were jobs that existed in significant numbers in the national and local economies that a person with Plaintiff's RFC and vocational factors (age, education, and work experience) could

---

[4]    Plaintiff does not challenge the ALJ's discounting of several other reports in the record about Plaintiff's mental condition.

perform (garment bagger, garment sorter, and retail price marker), the ALJ concluded

that Plaintiff was not disabled under the Social Security Act.

## DISCUSSION

### Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court "must review

the entire administrative record to determine whether the ALJ's findings are supported by

substantial evidence on the record as a whole." *Johnson v. Astrue*, 628 F.3d 991, 992

(8th Cir. 2011). The court "may not reverse . . . merely because substantial evidence

would support a contrary outcome. Substantial evidence is that which a reasonable mind

might accept as adequate to support a conclusion." *Id.* (citations omitted).

To be entitled to benefits, a claimant must demonstrate an inability to engage in

substantial gainful activity which exists in the national economy, by reason of a

medically determinable impairment which has lasted or can be expected to last for not

less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated

regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation

process to determine disability. The Commissioner begins by deciding whether the

claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the

Commissioner decides whether the claimant has a severe impairment or combination of

impairments. A special technique is used to determine the severity of mental disorders.

This technique calls for rating the claimant's degree of limitations in four areas of

functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id*. § 404.1520a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's regulation. If not, the Commissioner asks at step four whether the claimant has the RFC to perform her past relevant work. A disability claimant's RFC is the most she can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). In *McCoy v. Schweiker*, 683 F.2d 1138 (8th Cir. 1982) (en banc), *abrogated on other grounds*, 524 U.S. 266 (1998), the Eighth Circuit defined RFC as the ability to do the requisite work-related acts "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Id*. at 1147.

If the claimant can perform her past work, the claimant is not disabled. If she cannot perform her past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors—age, education, and work experience. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When nonexertional limitations significantly affect a claimant's ability to work, an ALJ is required to consult a VE and cannot rely on the Commissioner's Medical-Vocational Guidelines to meet this burden. *Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006); *Reynolds v. Chater*, 82 F.3d 254, 258–59 (8th Cir. 1996).

**<u>Weight According Medical Opinion Evidence</u>**

Plaintiff first argues that the ALJ failed to properly consider the opinion of her

treating psychologist, Dr. Cronk.

> A claimant's treating [source's] opinion will generally be given controlling
> weight, but it must be supported by medically acceptable clinical and
> diagnostic techniques, and must be consistent with other substantial
> evidence in the record. A treating [source's] opinion may be discounted or
> entirely disregarded where other medical assessments are supported by
> better or more thorough medical evidence, or where a treating [source]
> renders inconsistent opinions that undermine the credibility of such
> opinions. In either case—whether granting a treating [source]'s opinion
> substantial or little weight—the . . . ALJ must give good reasons for the
> weight apportioned.

*Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015); *see also Bernard v. Colvin*, 774

F.3d 482, 487 (8th Cir. 2014) ("Since the ALJ must evaluate the record as a whole, the

opinions of treating physicians do not automatically control."); *Hacker v. Barnhart*, 459

F.3d 934, 937 (8th Cir. 2006) (explaining that when a treating source's treatment notes

are inconsistent with her opinion, and ALJ may decline to give controlling weight to that

opinion). Moreover, a treating medical source's checkmarks on a form "are conclusory

opinions that may be discounted if contradicted by other objective medical evidence in

the record." *Martise v. Astrue*, 641 F.3d 909, 926 (8th Cir. 2011) (citing *Stormo v.

Barnhart*, 377 F.3d 801, 805-06 (8th Cir. 2004)).

Here, the Court concludes that the ALJ gave valid reasons for discounting Dr.

Cronk's opinions indicated on the September 11, 2013 Medical Source Statement, to the

extent those opinions limited Plaintiff such that she could not perform simple, routine,

9

and repetitive tasks requiring no interaction with the public and only occasional interaction with co-workers. As the ALJ found, those opinions contradict Dr. Cronk's own course of relatively conservative treatment, and her treatment notes from when she first began seeing Plaintiff in July 2012 until the end of 2013. These notes paint a fairly consistent picture of Plaintiff as responding well to treatment and coping relatively well with her depression and anxiety. As highlighted in Defendant's Statement of Additional Facts, Dr. Cronk's treatment notes report numerous times that Plaintiff was had an "appropriate mood and affect" and "normal judgment," and was "stable" and in "no acute distress." In addition Dr. Cronk's opinions expressed on the Medical Source Statement are not consistent with Dr. Cronk's own diagnosis of a GAF of 62, which indicates only mild impairment in functional areas.

The discounted opinions are also inconsistent with Plaintiff's daily activities, and with her ability to work in the past, work she left because she found it too physically taxing. *See Rolfson v. Colvin*, 45 F. Supp. 3d 931, 944 (N.D. Iowa 2014) (affirming the denial of disability benefits where despite the plaintiff's alleged social anxiety, he still visited with friends, looked for employment, and attended church, sporting events, and family gatherings).

Plaintiff also argues that because the ALJ afforded "great weight" to the opinion of consulting psychologist Dr. Sullivan, the ALJ committed reversible error in not incorporating into the RFC Dr. Sullivan's opinion that Plaintiff had moderate difficulty in (1) accepting instructions and responding appropriately to criticism from supervisors, (2)

completing a normal workday and workweek without interruption from psychologically-based symptoms; and (3) performing at a consistent pace without an unreasonable number and length of rest periods.

Here, there is evidence in the record that Plaintiff's ability to deal with authority figures would not impair her ability to work. Plaintiff wrote on her Function Report that she got along "very well" with authority figures, although she would get anxious and feared having to talk to them. (Tr. 267.) And a third-party statement submitted by Plaintiff's friend stated that Plaintiff got along "quite well" with authority figures. (Tr. 117.) Conversely, there is no suggestion in the record that Plaintiff ever had trouble with a supervisor in any of her past jobs.

The moderate limitation noted by Dr. Sullivan in Plaintiff's ability to perform at a consistent pace is accounted for in the RFC's restriction to simple, routine, repetitive tasks. *See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) ("[T]he ALJ's hypothetical concerning someone who is capable of doing simple, repetitive, routine tasks adequately captures [the plaintiff's] deficiencies in concentration, persistence or pace."). Lastly, Dr. Sullivan's opinion that Plaintiff had moderate limitations in the ability to complete a normal workday and workweek without interruption from psychologically-based symptoms does not mean that she would be precluded from work activity that would not require interaction with the public and only occasional interaction with co-workers. *See, e.g., Hight v. Colvin*, No. 5:14-CV-02591, 2015 WL 5159093, at *11 (N.D. Ohio Aug. 28, 2015).

In sum, upon review of the record, the Court concludes that there is substantial evidence in the record as a whole that, despite allegations of disabling mental impairments, Plaintiff's treatment records and her activities of daily living show conservative and minimal treatment managed her mental impairments to the extent that she could perform simple, routine, repetitive work that did not involve interacting with the public or more than occasional interaction with co-workers. Although the record could support a different result, the ALJ's decision was "within the available zone of choice" and should not be disturbed.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 30th day of September, 2016.